IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES | CRIMINAL ACTION |
| v. | |
| RAMON ORTIZ | NO. 16-129 |

DuBois, J.                                                                                                September 30, 2016

## M E M O R A N D U M

### I. INTRODUCTION

Defendant Ramon Ortiz is charged in an Indictment with one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and one count of simple possession of marijuana, in violation of 21 U.S.C. § 844(a).  Defendant moved to suppress physical evidence, including a loaded Kel-Tec, Model P-11, 9 mm semiautomatic pistol, a Clerke .32 caliber revolver, and marijuana, recovered from his vehicle.  An evidentiary hearing and oral argument on the Motion to Suppress Physical Evidence ("Motion to Suppress") were held on September 26, 2016.  For the reasons stated below, the Motion is denied.

### II. FACTS[1]

On the evening of January 13, 2016, Philadelphia Police Officers John Leible and Erick Fred were on patrol in a marked vehicle in the Kensington section of Philadelphia.  Hr'g Tr. 9:4-10:6; Def. Mot. to Suppress 3.  Officer Leible had patrolled the area for six months and knew it to be a high crime neighborhood.  Hr'g Tr. 16:25-17:3.  At 7:58 p.m., the Officers observed a silver Pontiac Bonneville, driven by defendant Ramon Ortiz, completely disregard a stop sign at the intersection of West Cumberland Street and North Front Street.  Hr'g Tr. 21:21-22:15, 11:2-

---

[1] The factual background is taken from the motion papers where undisputed and from the evidence presented at the September 26, 2016 hearing.

1

8. Leible immediately activated the patrol car's lights and pursued Ortiz. Hr'g Tr. 11:21-22. Ortiz pulled his vehicle over within the same block. Hr'g Tr. 12:17-20.

After pulling his vehicle over, Ortiz exited the automobile and walked "on an angle across the street towards the other side of the street." Hr'g Tr. 13:2-7. Leible ordered Ortiz back into the car, and he complied. Hr'g Tr. 13:8-11. While Leible spoke with Ortiz, Officer Fred approached the vehicle's female passenger, who was subsequently released after being searched and questioned by police. Gov't. Resp. in Opp'n. 1; Def. Mot. to Suppress 2.

Ortiz "appeared . . . nervous, very fidgety with his hands" during his conversation with Leible. Hr'g Tr. 13:12-19. In particular, Ortiz "was reaching around his pockets, his waist, and around the center console area of the vehicle." Hr'g Tr. 13:12-20. When asked for his license, insurance, and registration information, Ortiz provided the wrong documents. Hr'g Tr. 13:12-24. On three separate occasions, Ortiz placed his left leg out of the open driver's side door. Hr'g Tr. 13:12-18. Leible ordered Ortiz back into the car after the first two occasions. Hr'g Tr. 13:12-18. When Ortiz placed his leg out of the open driver's side door a third time, Leible ordered him out of the vehicle. Hr'g Tr. 14:23-15:2.

Once Ortiz was out of the vehicle, Leible frisked him for weapons and found no weapons or contraband. Hr'g Tr. 13:12-14:4. After securing Ortiz in the patrol car, Leible conducted a warrantless search for weapons in the passenger compartment of Ortiz's vehicle. Def. Mot. to Suppress 2. Before finishing the investigation and returning Ortiz to his car, Leible searched the car for weapons in the driver's seat, center console, and the backseat. Hr'g Tr. 13:12-14:7.

While Leible searched the backseat, he detected the odor of unburnt marijuana. Hr'g Tr. 13:12-14:7. He subsequently observed a cloth bag on the floor, partially jutting out from under the driver's seat. Hr'g Tr. 28:16-20, 34:9-14. The bag contained a loaded 9mm semiautomatic

pistol and a revolver with one spent shell casing.  Indictment; Hr'g Tr. 18:24-19:3.  Additionally, the bag contained an open, plastic sandwich bag with a small amount of marijuana inside.  Hr'g Tr. 18:17-23, 36:6-9.  Ortiz was then arrested.  Hr'g Tr. 19:4-5.

On March 31, 2016, a Grand Jury returned an Indictment charging Ortiz with one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and one count of simple possession of marijuana, in violation of 21 U.S.C. § 844(a).  On July 22, 2016, Ortiz filed a Motion to suppress the physical evidence against him.  On September 26, 2016, the Court held a hearing on the Motion.

### III.  LEGAL STANDARD

As a general rule, the burden of proof is on a defendant who seeks to suppress evidence. *Unites States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995).  However, once the defendant has established a basis for his motion, such as establishing that the search or seizure was conducted without a warrant, "the government bears the burden of showing that each individual act constituting a search or seizure under the Fourth Amendment was reasonable."  *United States v. Ritter*, 416 F.3d 256, 261 (3d Cir. 2002).  The applicable burden of proof is by a preponderance of the evidence.  *United States v. Matlock*, 415 U.S. 164, 178 n.14 (1974).

### IV.  DISCUSSION

The encounter between the Officers and Ortiz may be divided into three stages: (1) the initial traffic violation stop; (2) Leible's orders to remain in the vehicle and to exit the vehicle; and (3) the *Terry* stop, including the pat-down search of Ortiz and the warrantless search of his vehicle for weapons.

1. The Initial Traffic Stop

The Officers initially stopped Ortiz for disregarding a stop sign. "It is well-established that a traffic stop is lawful under the Fourth Amendment where a police officer observes a violation of the state traffic violations." *United States v. Moorefield*, 111 F.3d 10, 12 (3d Cir. 1997). "[A]ny technical violation of a traffic code legitimizes a stop, even if the stop is merely pretext for an investigation of some other crime." *United States v. Mosley*, 454 F.3d 249, 252 (3d Cir. 2006).

In this case, the Court finds that Ortiz failed to obey a stop sign and was initially pulled over for a traffic violation. While Ortiz was not issued a traffic citation pursuant to a written Philadelphia Police Department policy that precludes issuance of traffic citations if an individual is subsequently arrested for a criminal violation, Leible testified that Ortiz's traffic code violation prompted the initial stop, and the Court credits that testimony. Thus, the initial traffic stop of Ortiz was lawful under the Fourth Amendment.

2. The Orders to Remain in the Vehicle and to Exit the Vehicle

Leible ordered Ortiz to remain in the vehicle when he placed his left leg outside of the vehicle twice. When Ortiz repeated the action for a third time, Leible ordered him out of the vehicle. "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]." *Whren v. United States*, 517 U.S. 806, 809-10 (1996). However, a police officer executing a traffic stop may exercise reasonable superintendence over the vehicle and its passengers. *United States v. Bonner*, 363 F.3d 213, 216 (3d Cir. 2004). For example, an officer may order the driver out the vehicle during a traffic stop without any particularized suspicion. *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977).

Applying the law to the facts of this case, the Court concludes that Leible's directives to Ortiz to remain in the vehicle and then to exit the vehicle did not violate the Fourth Amendment. Leible first ordered Ortiz to remain in his car while the officer obtained the necessary information to complete the traffic violation investigation. When defendant twice placed his leg outside the vehicle, he was ordered to remain in the car. After doing that a third time, Leible ordered Ortiz to exit the vehicle. While the government is not required to demonstrate particularized suspicion justifying Leible's orders, it has presented facts supporting the orders. Leible's orders, during a lawful traffic stop, did not violate the Fourth Amendment.

    3.   The *Terry* Stop

The Court next turns to the question of whether the *Terry* stop, including the pat-down search of Ortiz and the warrantless search of his vehicle's passenger compartment, was justified by reasonable suspicion that Ortiz was armed and dangerous and was tailored in scope to the perceived threat posed by Ortiz.

Upon Leible's removal of Ortiz from the vehicle, the initial traffic stop was converted into a *Terry* stop. A police officer may conduct a reasonable search for weapons for his own protection if he has reasonable suspicion that criminal activity may be afoot or "that he is dealing with an armed and dangerous individual." *Terry v. Ohio*, 392 U.S. 1, 20, 27 (1968). To justify a *Terry* stop, the officer must be "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21. When evaluating the justification for the investigatory stop, a court must consider "the totality of the circumstances." *United States v. Austin*, 269 F. Supp. 2d 629, 632 (E.D. Pa. 2003) (citing *United States v. Valentine*, 232 F.3d 350, 353 (3d Cir. 2000)). The United States Court of Appeals for the Third Circuit has noted that the Supreme Court's pronouncement "on the Fourth

Amendment reasonable suspicion standard . . . accorded great deference to the officer's knowledge of the nature and nuances of the type of criminal activity that he had observed in his experience." *United States v. Givan*, 320 F.3d 452, 458 (3d Cir. 2003).

During the course of a vehicle *Terry* stop, an officer may pat down the occupants of a vehicle and conduct a search of the passenger compartment if the officer believes that occupants of the vehicle may be armed and dangerous. *Michigan v. Long*, 463 U.S. 1032, 1049-50 (1983). Removing an individual from a vehicle does not eliminate the justification for a search of the passenger compartment, as "the detained individual 'will be permitted reenter his automobile, and he will then have access to any weapons inside.'" *United States v. Hawkins*, 280 F. App'x 117, 121 (3d Cir. 2008) (citing *Long*, 463 U.S. at 1052).

During a traffic stop, an individual's uncooperative behavior, furtive hand movements, including gestures toward the waistband area, and attempts to exit a vehicle may give rise to reasonable suspicion that the individual is armed and dangerous. *Moorefield*, 111 F.3d at 14; *see also United States v. Woodall*, 938 F.2d 834, 837 (8th Cir. 1991) (holding that a passenger leaning down toward the floorboard twice may give an officer justification for conducting a pat-down); *United States v. Colin*, 928 F.2d 676, 678 (5th Cir. 1991) (finding that stooping down and moving from side to side in the front seat of a vehicle may provide reasonable suspicion that the person is armed and dangerous). Additionally, nervous behavior by the stopped individual supports a finding that an officer had reasonable suspicion to conduct a search for weapons. *Valentine*, 232 F.3d at 357. Finally, an area's reputation for criminal activity can support a finding of reasonable suspicion. *United States v. Goodrich*, 450 F.3d 552, 561 (3d Cir. 2006).

In this case, Ortiz exited the vehicle at the start of the traffic stop but complied when Leible ordered him back into the vehicle. Ortiz then placed his left leg outside the vehicle three

times despite being ordered back into the vehicle.  Ortiz repeatedly reached toward his waistband and swiveled toward the vehicle's center console.  He appeared nervous throughout the encounter and provided the wrong documents to Leible when asked for his license and registration.  Additionally, Ortiz was pulled over in the Kensington area of Philadelphia, known to Leible as a high-crime area.  These facts provide a sufficient basis for the Court to conclude that the Officers had a reasonable suspicion that Ortiz might be armed and dangerous.  Thus, the *Terry* frisk of Ortiz's person and vehicle did not violate the Fourth Amendment.

　　　The Court next turns to the discovery of the two weapons and marijuana on the floor behind the driver seat during the *Terry* search of Ortiz's vehicle.  "If, while conducting a legitimate *Terry* search of the interior of the automobile, the officer should . . . discover contraband other than weapons, he clearly cannot be required to ignore the contraband, and the Fourth Amendment does not require its suppression in such circumstances."  *Long*, 463 U.S. at 1050.  "It is well-settled that the smell of marijuana alone, if articulable and particularized, may establish not merely reasonable suspicion, but probable cause."  *United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006).  "If probable cause exists, officers may search any part of the vehicle—including containers—that might conceal contraband."  *United States v. Salmon*, 944 F.2d 1106, 1123 (3d Cir. 1991).

　　　Based on his reasonable suspicion that Ortiz was armed and dangerous, Leible searched the passenger compartment of the vehicle, including the backseat.  While searching the backseat of the vehicle, Leible, an officer with two years of experience, detected the odor of unburnt marijuana.  Continuing the search, Leible observed a cloth bag jutting out from underneath the rear of the driver's seat.  Inside the bag, Leible discovered two handguns, a loaded Kel-Tec,

Model P-11, 9mm semiautomatic pistol and a Clerke .32 caliber revolver with a spent casing in its chamber, and an unsealed plastic sandwich bag containing marijuana.

The Court concludes that the odor of unburnt marijuana established probable cause for a more thorough search of Ortiz's vehicle and any containers inside the automobile that might conceal contraband. The two weapons and the marijuana were properly seized during that more extensive search.

## V.   CONCLUSION

For the foregoing reasons, the Court denies defendant Ramon Ortiz's Motion to Suppress Physical Evidence. An appropriate order follows.